## CHARLIE RICE V. THE STATE.

No. 15219. Delivered October 19, 1932.
Reported in 53 S. W. (2d) 629.

The opinion states the case.

*Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, robbery; the punishment, seven years in the penitentiary.

This case grows out of the same transaction and practically the same facts as were developed in the case of Willie Rice v. State, 121 Texas Crim. Rep., 68, recently decided by this court. In the Willie Rice case the offense there charged was a conspiracy to commit the crime of robbery, while in this case the appellant

was convicted as a principal to the robbery. Both matters grew out of the robbery of the Lohn State Bank on January 6, 1930. It was charged in the first count in the indictment in this case that the "appellant, Charlie Rice, Chick McKay, and Ollice Woods acting together did in and upon W. F. Roberts, Jr., make an assault by using and exhibiting firearms, and did thereby against the will of the said Roberts, Jr., take from the person and possession of the said Roberts certain money." The second count in the indictment charged the same parties with unlawfully conspiring, combining, confederating, and entering into a positive agreement with each other to commit the offense of robbery.

Only the guilt or innocence of the appellant under the first count of the indictment was submitted to the jury.

The record further shows that the case has been dismissed as to each of the parties charged in said indictment except the appellant, Charlie Rice. The evidence in this case comprises some 120 pages of typewritten testimony, which makes it impractical to set out the testimony except as to the most material facts.

At about 7:30 on the morning of January 6, 1930, Mr. Roberts, cashier of the Lohn State Bank, went to the bank preparatory to opening said bank for the day. As he unlocked the front door and entered he was confronted by a man with a drawn pistol, who required him to unlock the vault and deliver to him approximately $1,400 of the bank's money. The money so taken consisted of bills of different denominations and silver in nickels, dimes, quarters, and half-dollars. Said Roberts testified that he saw the form of another man come from the back on into the lobby of the bank, but that he did not see the other man well enough to identify him. After the man had received the money, the witness testified that he heard two or three men talking at the rear of the bank, but he could not say how many.

Another witness testified that he lived about 50 yards west of the Lohn Bank, and about eight o'clock on the morning of the alleged robbery he saw two men, one of whom was dressed in a gray overcoat and who was a pretty good sized man, come out of the back door of the bank and get into a model A Ford roadster parked out there and leave immediately thereafter, going in a northeastern direction.

Several witnesses testified for the state that they noticed a Ford roadster going up the Santa Anna road, which road led in the direction of what was known as the Jennings oil

lease in Coleman county. All of said witnesses testified that the car was going at a rapid rate of speed and they could not recognize who was in the car or the number of persons in the car because the curtains of said car were up.

There was only one witness for the state who testified to his opinion as to who was in the car, and he testified that he saw a Ford roadster passing about 20 or 30 feet from him, but the curtains were up, the lights were burning, and it was going about 35 or 40 miles an hour; that he saw three people in the car, and he was pretty sure that one of them was Charlie Rice, the appellant, and he believed he was the man who was driving the car. He further testified that he could not swear positively that the appellant was one of the men in the car.

Another witness for the state testified that he was near Willie Rice's residence two days before the date of the alleged robbery and he saw a car standing near Willie Rice's residence and saw a couple of men changing the number plates, and he thought it was Joe Rice's, the brother of appellant, car, which was a Ford roadster. He further testified that he did not know positively who the two men were who were changing the number plates because he was at a distance of about 75 yards from the car. He further testified, over the objection of appellant, that in his opinion the two men were Charlie Rice, the appellant, and his brother, Joe Rice.

It was also in evidence that on the morning of the alleged robbery a Ford roadster with the curtains up was seen coming towards the house of appellant's brother, Willie Rice, but the witnesses testifying could not tell whether there was more than one man in the car. The car was going towards a vacant house about half a mile from the house of Willie Rice. The testimony was to the effect that the lights on said car were burning at the time, and there was further testimony to show on behalf of the state that a few minutes after the car passed the house of Willie Rice, the said Willie Rice and his brother, Joe Rice, with another man were seen to leave Willie Rice's house and go towards the vacant house; but the evidence showed that neither one of the three men was the appellant, Charlie Rice. It is also shown by the evidence that the Ford roadster testified about was later seen parked in the vicinity of the vacant house, and the lights were still burning. The vacant house had been formerly occupied by Joe Rice, appellant's brother. Several hours after the robbery, officers went to said vacant house and upon aprpoaching the house the officers saw five or six

men fleeing from the vicinity thereof. A gun battle ensued in which Ollice Woods was killed. His body was afterwards identified by the witness Roberts as the person who perpetrated the actual robbery. The officers found some currency in the vacant house, and this currency was identified by the witness Roberts by reason of some clips that had been placed on the currency by him. The money was not marked otherwise.

The only evidence offered by the state as to the appellant being one of the five or six men seen to run from the vicinity of the vacant house was the testimony of one Blanton, who was with P. L. Dyches, deputy sheriff, at the time of the shooting. Blanton testified that he knew Willie and Joe Rice and also the appellant, Charlie Rice. He testified that when they got within one or two hundred yards of the vacant house that six men ran out of it and he and the deputy sheriff took after them; that the men were running through the woods, and while they were following them one of the parties looked back and he believed to the best of his knowledge that it was Charlie Rice, the appellant.

Testifying in his own behalf, appellant denied any connection with the offense. The evidence showed that the Ford automobile found at the vacant house belonged to appellant's brother, Joe Rice. Appellant had no interest in it. He testified that he left the home of his brother, Willie Rice, on the Sunday morning before the alleged robbery on Monday morning, and went from his brother's house to Brownwood, Texas, and on the morning of January 6, 1930, he was in Brownwood and not at Lohn. He denied that he was one of the persons who had changed any plates on his brother's car. He testified that the last time he had seen Ollice Woods was on Sunday morning when he and the said Woods went to Brownwood in his brother's automobile, and that the said Woods left him in Brownwood and drove his brother, Joe Rice's car, promising to take it home; that he had only known the said Woods a few months and did not know anything about him other than he had worked with him on a pipe line; that he stayed in Brownwood until Monday morning when he started to California hitch-hiking; that he was going to California because his father and mother had lived there for a long time and he had been preparing to go for some time; that while he was walking along the road he was given a ride by a woman; that she asked him to drive, and he was driving said car when they got to Buse's filling station; and that he bought the gas and rode with the lady to Abilene.

The appellant introduced several witnesses who testified that they saw a Ford roadster on the morning of the robbery about the same time of morning and going in the same direction as that testified to by the state's witness. They testified positively that they saw who was in the Ford roadster and appellant was not one of the three persons in said car.

The witness J. H. Buse testified that he lived six miles south of Bangs, Texas, in Brown county, Texas, and he saw the appellant on the morning of January 6, 1930, at his place of business about six miles south of Bangs; that at that time he was traveling in a big car and he bought some gas from him; that it was early in the morning around sunup. There was a lady with appellant and there was no other man in the car, and the car had an Oklahoma license on it; that he knew it was on Monday, January 6, 1930, because it was on that day that he heard about the bank being robbed; that after he had put the gas in the car the appellant drove off with the lady, going north.

The evidence shows that the appellant was afterwards arrested in California and came back with the officers without any objection; that he did not resist extradition or demand any extradition papers at all; and that he signed a waiver.

Other than the facts stated and the further fact that the appellant was associated with his brothers and Woods prior to the robbery, we have nothing in the testimony tending to show that appellant was connected as a principal with the commission of the offense. The state in this case relied for conviction alone on circumstantial evidence, and the trial court so charged the jury. Appellant contends that the evidence was insufficient to support a conviction. A conviction on circumstantial evidence can not be sustained unless the circumstances proven exclude every other reasonable hypothesis except that of the guilt of the accused. Proof that only amounts to strong suspicion or mere probability is not sufficient to support a conviction. Branch's Ann. P. C., sec. 1877; Hernandez v. State (Texas Crim. App.), 72 S. W., 840. There must be evidence overcoming the presumption of innocence and excluding every other reasonable hypothesis except the guilt of defendant. Branch's Ann. P. C., sec. 1877; Hernandez v. State, supra; Pogue v. State, 12 Texas App., 283; Hogan v. State, 13 Texas App., 319; Clifton v. State, 39 Texas Crim. Rep., 619. This, we think, the evidence fails to do.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.