SADIE RICKER v. THE STATE.

No. 20943. Delivered March 27, 1940.
On Appellant's Motion to Reinstate Appeal, May 15, 1940.

The opinion states the case.

*M. E. Lawrence,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for possessing beer for the purpose of sale in Brown County, alleged to be dry area; punishment being a fine of $100.00.

The appeal must be dismissed because of an insufficient recognizance. It recites that appellant was convicted of the "offense of possession of beer," as shown in the complaint and information, and as more fully described in the judgment of conviction. Possession of beer is not an offense, and there is no recital in the recognizance that appellant was convicted of a misdemeanor as is required in the statute.

The same defect appears in this recognizance as is apparent in Cause No. 20,946, I. B. Burns, Sr., v. State, opinion dismissing appeal of this date. (Page 267 of this volume.)

It is a matter of some curiosity to this Court why, with Article 831 of the Code of Criminal Procedure plainly setting out the form of a recognizance on appeal in misdemeanor cases, that proper recognizances and appeal bonds can not be prepared.

The appeal is dismissed for the reasons heretofore stated.

ON APPELLANT'S MOTION TO REINSTATE APPEAL.

HAWKINS, Presiding Judge.

Conviction is for possessing beer for the purpose of sale in

Brown County, Texas, alleged to be dry area; punishment being a fine of one hundred dollars.

The appeal was dismissed at a former day of the term on account of a defective recognizance. The defect has been cured by a proper appeal bond, and the appeal will be reinstated and now considered on its merits.

The facts are short but quite confusing. On May 6th, 1939, officers, under authority of a search warrant, found in a house at 1818 Second Street, in Brownwood, 23 cases of beer. They were stacked between the headboard of a bed and the wall. Appellant was not present when the officers took possession of the beer, and none of them ever saw her at any time about the place. Mrs. Funderberg was at the house when the search was made. The State proved by her that she was there cleaning up the house preparatory to moving into it. Appellant was a niece of witness' husband. During the direct examination of witness she testified that appellant came to the house while witness was there, sat down and pulled off her shoes and hat. In this connection, she said appellant "lived there." On cross examination witness said the house belonged to some heirs— naming some of them—but she thought no one had it rented, and that she thought no one was living in it. At this point we quote her evidence.

"Mr. Richardson had been living there, * * * Sadie (appellant) had a room there for a while. Immediately after Mr. Richardson moved out I contemplated moving in. I asked Sadie twice to leave some things in that house so that I could hold the house. That was about ten days before I went to clean up the house. Mr. Richardson moved out about ten days before. I don't know when Sadie moved out. I don't know whether or not Sadie vacated at the same time he did or not. I asked her to leave some things to hold the house. Those things were there. I had been there twice at that house. The first day I went there I looked over the entire house. Well, I was in all of it. I did not see any beer the first day I was there. That was the first day Sadie came in and pulled off her shoes and that was the 5th and then on the 6th day of May the officers came out, Sadie wasn't there. * * * There was some men came after some of the beer on the 5th. Sadie didn't come after any beer. I do not know who this was that came after the beer that is the man. He didn't knock but came right on in. The only reason I knew he was there me and my sister started to get a tub of water off a stove and he told us to wait a minute and

he would help us. We managed the tub by ourselves and then saw him picking up three cases of beer and carrying it out. Since it had been vacated there wasn't any locks on the door that I knew of. Anyone could go in and out. I don't know about night time. I never tried to lock the door. I do know someone came and got three cases of beer and then the officers came and got the rest of it. I get kind of confused about the fifth and 6th, I don't know which it was. I do know some one came and got some beer and then in the afternoon the officers got the rest of it and there was nobody living in the house at the time. There wasn't any sign of any one cooking, eating and sleeping in there."

Mrs. Gibby, a sister of Mrs. Funderberg, was assisting Mrs. Funderberg in cleaning the house and testified substantially as did her sister. Some man whom neither of them knew came to the house both on the 5th and 6th of May, one time taking away with him two cases of beer and the other time four cases. Appellant was not present upon either of these occasions. Both Mrs. Funderberg and Mrs. Gibby affirmed that the beer did not belong to them. In the room where the beer was stacked was a bed, table, stove and some clothes on the wall. The record does not show whether the clothes were female or male wearing apparel.

The foregoing facts are substantially all that was developed from the State's witnesses. Appellant did not testify, but introduced Mr. Richardson as a witness. He testified as follows:

"Along about April or May this year, I lived at 1818 Second Street. I am a married man. My family lived there with me. My sister-in-law lived there too. This defendant is my sister-in-law and she used to live with me on Second Street. I moved away from 1818 Second Street along in April. When I moved from there and moved my things, I moved my sister-in-law's, the defendant's. My wife's aunt, Mrs. Funderberg wanted me to leave some furniture there so that she could keep possession of the house. I didn't leave anything of mine there. She said something to my-sister-in-law, the defendant about leaving a bedstead there and a little table so she could keep possession of the house. I moved the defendant over to her mother's. * * * I didn't know it if she had moved back to 1818 Second Street. Her things were at her mother's. I moved her in April and moved her over to her mother's. Her mother lives at 800 West Anderson. She was living there on the 6th of May. She was

staying there. I was over there every day. * * * All I know is that I moved her things over to her mother's. * * *"

No effort seems to have been made to ascertain from Mr. Richardson the name of the party from whom he rented the property nor from Mrs. Funderberg the right under which she proposed to occupy the house, after Richardson vacated it. The only person shown by the State to have actually exercised control over the beer in question was the unknown man who on two different occasions took away from the house a part of said beer. Of course, if appellant exercised joint control and management with said unknown man she would be a principal offender, or if she had exclusive control of the beer and the said man took a part of the beer with her permission she would be a principal. To our minds the evidence seems to raise barely a suspicion that appellant was a principal on either theory suggested. It appears from the evidence that the house was unlocked and that anyone could have entered it and stored the beer found there. The only evidence which approaches the fixing of possession of the house on appellant is that on May 5th she came into the house while two other women were there, took off her shoes and hat and said something about changing her clothes. This fact must be viewed in the light of the further fact that the State's own witness testified that she had requested appellant to leave some things in the house for the purpose of aiding the witness to occupy it. We fail to see the reason for asking appellant to "leave" some things if appellant herself was remaining in possession. It rather supports the theory that the witness understood appellant was not to remain as an occupant of the house. To our minds the evidence falls short of measuring up to the standard required of circumstantial evidence. We quote from the opinion in Rice v. State, 122 Tex. Cr. R. 64, 53 S. W. (2d) 629, as follows:

"A conviction on circumstantial evidence can not be sustained unless the circumstances proven exclude every other reasonable hypothesis except that of the guilt of the accused. Proof that only amounts to strong suspicion or mere probability is not sufficient to support a conviction. Branch's Ann. P. C. Sec. 1877; Hernandez v. State, (Tex. Cr. App.) 72 S. W. 840. There must be evidence overcoming the presumption of innocence and excluding every other reasonable hypothesis except the guilt of defendant. Branch's Ann. P. C., Sec. 1877; Hernandez v. State, supra; Pogue v. State, 12 Tex. App. 283; Hogan v.

State, 13 Tex. App. 319; Clifton v. State, 39 Tex. Cr. R. 619, 47 S. W. 642. This, we think, the evidence fails to do."

The foregoing observation reflects our view under the record in the present case.

The judgment is reversed and the cause remanded.